# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| DELROY E. MILLER, JR., | ) ) ) | |
| Plaintiff, | ) ) | No. 20-1320C |
| v. | ) ) | (Filed: November 30, 2022) |
| THE UNITED STATES OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |

Cynthia A. Dill, The Law Office of Cynthia Dill, Portland, ME, for Plaintiff.

Meen Geu Oh, Senior Trial Counsel, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were Reginald T. Blades, Jr., Assistant Director, Patricia M. McCarthy, Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General, for Defendant. Frederick Rudesheim, Litigation Attorney, United States Legal Services Agency, Fort Belvoir, VA, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

This Military Pay Act case was brought by Delroy Miller, Jr., a Lieutenant Colonel ("LTC") in the United States Army Reserves. It is currently before the Court following remand proceedings before the Army Board for the Correction of Military Records ("ABCMR"). The government requested the remand because—as a result of what it characterizes as an "administrative oversight"—the Army failed to timely remove a cautionary "flag" from LTC Miller's personnel records and, as a result, he was not considered for promotion in 2018 and 2019. On remand, the ABCMR corrected the procedural error by convening a Special Selection Board ("SSB"). But the SSB ultimately recommended against the promotion, and the Army and the Department of Defense concurred to deny it.

1

The government has now moved to dismiss the case pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), based on lack of subject-matter jurisdiction. It contends that the proceedings before the ABCMR supplied LTC Miller with all of the relief available to remedy the procedural error that he identified in his complaint, and that this Court lacks jurisdiction over LTC Miller's remaining claims. For the reasons set forth below, the Court agrees with the government and therefore **GRANTS** its motion to dismiss.

## BACKGROUND[1]

### I. The Complaint

In early 2017, LTC Miller was recommended, considered for, and selected for a battalion command while serving voluntarily in the Army Reserve Individual Ready Reserve. See Compl. ¶ 13, ECF No. 1; Mot. for Leave to File Attached Remand Decision of the Army Board for the Correction of Military Records, Ex. 1 [hereinafter "ABCMR Remand Decision"], at 4, ECF No. 22-1. He signed an assumption of command letter on April 15, 2017, and he prepared to perform the change-of-command ceremony on May 19. See ABCMR Remand Decision at 4. In the interim, however, on April 27, he received an email from the Command Review Board ("CRB"), advising him that he had been referred to the Board on the basis of a 1995 Criminal Investigative Department Report that allegedly contained derogatory information about him. See id.[2] He was

---

[1] The Court draws the facts in this Opinion from the allegations in the Complaint, exhibits attached to the parties' pleadings, and the ABCMR's Remand Decision. See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (noting that the Court may consider exhibits to a pleading as part of that pleading in deciding a motion to dismiss for lack of subject-matter jurisdiction) (citing RCFC 10(c)). The Court will accept all undisputed facts as true and "draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

[2] When considering officers for promotion, the Army convenes selection boards to make recommendations concerning promotion to the next higher grade. See Army Regul. 600-8-29, § 2-3(a), available at https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN30301-AR_600-8-29-

2

further advised that a "flag" had been placed in his personnel records which only the CRB could remove. See Compl. ¶¶ 14–16; see also id. at Ex. B; ABCMR Remand Decision at 10. The effect of the flag was that, effective April 20, 2017, LTC Miller was not eligible to be considered for promotion. See Compl. at Ex. B.[3]

The CRB convened on July 21, 2017, and, upon review of the allegedly derogatory information, cleared the flag and recommended that LTC Miller be retained on the 2017 battalion command list. See Def.'s Corrected Mot. to Remand at 2. The flag, however, was not removed until May 26, 2020, despite requests by LTC Miller in the interim that the Army do so. See ABCMR Remand Decision at 12. The removal was effective retroactive to April 20, 2017. See id.

In Count I of his complaint, LTC Miller mounts "a procedural challenge to the Army's decision not to consider promotion and/or unjust delay in the process of considering promoting [him] to Colonel." Compl. ¶ 26. He seeks monetary relief under the Military Pay Act, 37 U.S.C. §§ 201, 204, "for military pay not received due to a flawed promotion procedure." Id. ¶ 29.

---

000-WEB-1.pdf (Sept. 9, 2020). These boards are comprised of at least five active-duty Army officers. See id. at § 2-4(a). Boards will consider a broad array of information in making their promotion decision, including "[a]dverse information." See id. at § 2-6(b)(3)(c).

[3] As the government explains, pursuant to Army regulations "[a]ll individuals that are selected for [battalion] command, either as a primary or alternate, undergo a command suitability review." Def.'s Corrected Mot. to Remand at 2, ECF No. 13 (citing Ex. A, ¶ 3.a). Further, "[d]uring this review, Human Resources Command (HRC) reviews files from the Army's Criminal Investigation Division (CID, Department of the Army Inspector General (DAIG), and the Officer's personnel file (including the restricted portion) to conduct its assessment." Id. (citing id., Ex. A, ¶ 3.b.). "If the review reveals derogatory information, the information is forwarded to a General Officer Review Board, which then determines whether the officer should be considered by a Command Review Board (CRB) for retention or removal from the command list." Id. (citing id. ¶ 3.b.).

In Count II, LTC Miller cites the Military Whistleblower Protection Act, 10 U.S.C. § 1034. He alleges that the Army violated that Act "[b]y taking unfavorable personnel actions against [him] as reprisal for communicating to persons in his chain of command reports of what he reasonably believed were violations of the law and/or Army regulations." Id. ¶ 32.[4]

In Count III, LTC Miller alleges a violation of his constitutional rights. He contends that the Army "depriv[ed] [him] of his property and liberty interests without due process and retaliat[ed] against him for exercising his First Amendment rights," in violation of the United States Constitution. Id. ¶ 34.

## II.     Remand to the ABCMR

On February 12, 2021, the government moved to remand the case to the ABCMR. See Def.'s Corrected Mot. to Remand. In its motion, the government acknowledged that, pursuant to Army regulations, the flag placed in LTC Miller's file should have been removed after the CRB decided to retain LTC Miller on the battalion command list on July 21, 2017. See id. at 2–3. The government attributed the failure to remove the flag to an "administrative oversight," and denied any retaliatory motive. See id. at 3.

---

[4] The Court understands Count II to allege reprisal in response to LTC Miller's partially successful 2014 suit against the Army. See Miller v. United States, 119 Fed. Cl. 717 (2015). In that case, LTC Miller alleged that he received a negative Officer Evaluation Report ("OER") in 2003 in retaliation for speaking out against a disrespectful senior officer and that senior officers fabricated details to justify their decision to relieve him of his command. See id. at 722. He further alleged that, because of the negative OER, he was passed over for promotion in 2006. See id. at 731. The court agreed that the procedures the Army employed in making the promotion decision were flawed and remanded the matter to the ABCMR. Id. at 732–33. The Board concluded that the negative OER should have been removed and directed an SSB to consider whether to retroactively promote LTC Miller. See Compl. ¶¶ 8–9. Upon review, the SSB recommended retroactive promotion, which the Secretary of Defense's designee granted. See id. ¶¶ 11–12.

The government advised in its remand motion that the Army finally lifted the flag in 2020, with an effective date of April 20, 2017. See id. At the same time that it lifted the flag, the Army issued corrected orders for Miller's promotion to Lieutenant Colonel with an adjusted date of rank of December 29, 2013, and published those orders on June 2, 2020. Id.; see ABCMR Remand Decision at 8, 12. Given his 2013 date of rank, he should have been considered for promotion to Colonel, but was not due to the erroneous retention of the flag. See ABCMR Remand Decision at 8. Based on the Army's error, the government requested that the Court remand the case to the Secretary of the Army, with instructions to submit the claims to the ABCMR to consider whether LTC Miller should be promoted, retroactive to 2017. See id.

On March 8, 2021, the Court granted the government's motion and remanded the case to the ABCMR with directions to conduct further proceedings to "evaluate LTC Miller's contentions, including his claim that, but for the allegedly erroneous flag placed on his record on April 20, 2017, he would have been promoted in 2018 and 2019." See Order Granting Mot. to Remand and Staying Case at 2, ECF No. 17. In addition, the Court instructed the Board to provide LTC Miller with "additional relief consistent with its findings, including by convening a special selection board to determine whether he should be promoted pursuant to 10 U.S.C. § 1552." Id.

### III. Proceedings on Remand

In a June 27, 2022, joint status report, the parties advised the Court that the proceedings on remand had been completed. See Joint Status Report [hereinafter "June 27 Joint Status Report"] at 1, ECF No. 31. They explained that the ABCMR had made the necessary administrative corrections to LTC Miller's records and requested that an SSB consider him for promotion under the relevant criteria. See generally ABCMR Remand Decision (discussing the

circumstances surrounding the administrative error, acknowledging the appearance of retaliation, and recommending that LTC Miller be considered for promotion).[5] They further stated that, on review, the SSB had recommended that LTC Miller not be promoted to Colonel and that the Secretary of the Army's designee, as well as the designee of the Secretary of Defense, concurred. See June 27 Joint Status Report at 1–2.

On July 18, 2022, the parties filed another joint status report regarding further proceedings. Joint Status Report [hereinafter "July 18 Joint Status Report"], ECF No. 33. In it, they advised the Court that it was the government's position that "the Army's decision affords a satisfactory basis for disposing of the complaint in its entirety." Id. at 1. On the other hand, they reported, "Plaintiff believes that the Army's decision does not resolve his separate retaliation and Due Process claims." Id. They therefore proposed (and the Court agreed, see Scheduling Order, ECF No. 34) that the remaining issues should be briefed in the context of a motion to dismiss to be filed by the government. July 18 Joint Status Report.

The government's motion to dismiss is now fully briefed. For the reasons set forth below, the government's motion is **GRANTED**, and the case is **DISMISSED** based on lack of jurisdiction.

## DISCUSSION

In considering a motion to dismiss under RCFC 12(b)(1), the Court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." Trusted Integration, Inc., 659 F.3d at 1163; see also Estes Exp. Lines v. United States, 739 F.3d 689, 692 (Fed. Cir. 2014) (same). The plaintiff, however, has the burden

---

[5] The ABCMR found that, based on relevant regulations and evidence, LTC Miller was ineligible for consideration for promotion to Colonel for FY17 and FY18, but that he should be considered for promotion for FY19. See ABCMR Remand Decision at 10–11.

of establishing subject-matter jurisdiction by preponderant evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Therefore, if the government challenges a plaintiff's allegations of jurisdiction in a motion to dismiss under RCFC 12(b)(1), only those factual allegations that the government does not controvert are accepted as true. Shoshone Indian Tribe of Wind River Rsrv. v. United States, 672 F.3d 1021, 1030 (Fed. Cir. 2012); see also Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (noting that when reviewing a motion to dismiss for lack of subject matter jurisdiction, the court accepts only uncontroverted factual allegations as true) (citing Gibbs v. Buck, 307 U.S. 66, 72 (1939)). Where jurisdictional facts are controverted, the Court "may consider relevant evidence in order to resolve the factual dispute." Reynolds, 846 F.2d at 747; see also Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991) (finding that a court may "inquire into jurisdictional facts" in ruling on a motion to dismiss under RCFC 12(b)(1)).

The Court of Federal Claims has jurisdiction under the Tucker Act to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). While the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights, United States v. Testan, 424 U.S. 392, 398 (1976). Plaintiffs invoking the court's jurisdiction must therefore identify an alternative source of a substantive right to money damages arising out of a contract, statute, regulation, or constitutional provision. See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

The Court agrees with the government that LTC Miller's remaining claims are not sourced in a money-mandating statute, regulation, or constitutional provision. For that reason, dismissal for lack of jurisdiction is appropriate.

First, it is well established that the Military Whistleblower Protection Act, 10 U.S.C. § 1034 is not a money-mandating statute. See Volk v. United States, 111 Fed. Cl. 313, 326 (2013); Chisholm v. United States, 82 Fed. Cl. 185, 199 (2008), aff'd per curiam, 298 Fed. Appx. 957 (Fed. Cir. 2008); Gant v. United States, 63 Fed. Cl. 311, 316 (2004). While "[t]he Military Whistleblower Protection Act provides an 'administrative process for handling complaints of improper retaliatory personnel actions,'" it does not provide "a jurisdictional basis for filing a claim in this Court." Rana v. United States, 130 Fed. Cl. 629, 634–35 (2016) (quoting Soeken v. United States, 47 Fed. Cl. 430, 433 (2000), aff'd, 20 Fed. Appx. 900 (Fed. Cir. 2001). Indeed, when LTC Miller invoked the Act as the basis for one of the claims in his 2014 complaint, the court similarly dismissed the claim for lack of jurisdiction. See Miller, 119 Fed. Cl. at 729.

Second, the due process guarantees of the United States Constitution "are not money-mandating sources of law to support military pay claims." Id. at 729 (citing Volk, 111 Fed. Cl. at 326). Therefore, LTC Miller's claim that "[b]y depriving [him] of his property and liberty interests without due process and retaliating against him for exercising his First Amendment rights, the Defendant has violated the Constitution of the United States" is also not within this Court's jurisdiction. Compl. ¶ 34.

Finally, the Court notes that, while the Military Pay Act is a money-mandating statute, Smith v. Sec'y of Army, 384 F.3d 1288, 1294 (Fed. Cir. 2004), LTC Miller cannot rely on that Act as a basis for jurisdiction over Count I of his complaint, which alleged that the Army committed a procedural error that prevented him from being considered for promotion. On

8

remand, the Army followed the required procedures and made a decision on the merits not to promote him. The Military Pay Act "ordinarily does not give rise to a right to the pay of a higher rank for which the [service member] was not selected." Id. To the contrary, with exceptions not relevant here, "a service member is entitled only to the salary of the rank to which he is appointed and in which he serves." Id.; see also Campbell v. United States, No. 2022-1382, 2022 WL 2824674, at *2 (Fed. Cir. July 20, 2022) (same). The Court, therefore, "do[es] not have jurisdiction of a back pay claim predicated on a promotion not received." Smith, 384 F.3d at 1294 (quoting Knightly v. United States, 227 Ct. Cl. 767, 769 (1981)); see also Law v. United States, 11 F.3d 1061, 1065 (Fed. Cir. 1993).

Indeed, LTC Miller appears to concede in his response to the government's motion to dismiss that—because the original procedural error was corrected during the remand proceedings—the Court lacks jurisdiction to afford him any more relief under the Military Pay Act with respect to his failure-to-promote claim. See Pl.'s Resp. at 2 (noting that "the ABCMR resolved" "the issue of promotion to Colonel"). Nonetheless, LTC Miller contends, "that detour to resolve the promotion issue does not fully and finally resolve [his] case before this Court." Pl.'s Resp. at 1, ECF No. 36. Specifically, he argues that the delay in removing the flag "caused him to lose his battalion command." Id. at 2. Further, he asserts that he lost pay as a result of not assuming a battalion command because "[o]n average training battalions perform approximately 72 training days," and that "[a]s Battalion Commander, [he] would have been paid an additional 20 days to prepare, travel to different units and attend meetings and conferences." Id. at 3.

LTC Miller's reliance on this claim as a basis for opposing the government's motion is unavailing. First, as the government observes, LTC Miller did not press this claim or request relief based on his loss of a battalion command until he filed his opposition to the government's

motion to dismiss. See Def.'s Reply at 6, ECF No. 39. To be sure, LTC Miller's complaint makes several assertions regarding the effect of the erroneous flag on his ability to secure a battalion command. See, e.g., Compl. ¶¶ 20 ("Miller could not enroll in school, assume any command, or pursue any other opportunities to further his career."), 24 ("The retaliatory actions of the Army . . . caused [Miller] to lose his battalion command"). But until responding to the government's motion to dismiss, LTC Miller did not claim any entitlement to monetary relief based on these assertions.

In any event, even assuming that the claim had been made, the Court would still lack jurisdiction over it under the Military Pay Act because there is no statute or regulation that entitles LTC Miller to receive pay for training he never attended or work he never performed. To the contrary, 37 U.S.C. § 206(a)(1) provides that reserve officers are entitled to compensation "for each regular period of instruction, or period of appropriate duty, at which the member is engaged." (emphasis supplied). Therefore, "a member who is serving in part-time reserve duty in a pay billet, or was wrongfully removed from one, has no lawful pay claim against the United States for unattended drills or for unperformed training duty." Palmer v. United States, 168 F.3d 1310, 1314 (citing Dehne v. United States, 970 F.2d 890, 894 (Fed. Cir. 1992) (finding National Guard officer had no right to back pay for constructive service when he was transferred from active service to the reserves)); Banks v. Garrett, 901 F.2d 1084, 1087 (Fed. Cir. 1990) (finding Plaintiff had no right to back pay when he performed no reserve drills after his lawful transfer). "These rules apply even when[, as here,] a reservist alleges that the military has acted unlawfully

and the reservist was wrongfully prevented from performing his or her reservist duties." Kuntz v. United States, 141 Fed. Cl. 713, 716 (2019) (citing Palmer, 168 F.3d at 1313).[6]

In short, LTC Miller's remaining claims are not within this Court's jurisdiction. The government's motion to dismiss will therefore be granted.

## CONCLUSION

For the foregoing reasons, the government's motion to dismiss is **GRANTED**, and the complaint is **DISMISSED** based on lack of jurisdiction. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge

---

[6] Although not relevant to the jurisdictional question, LTC Miller's argument that the failure to remove the flag led to his not receiving a battalion command ignores that the CRB actually retained him on the battalion command list in 2017 and that he did not apply for the position again in 2018 and 2019, as is required to be considered for a battalion command. See Def.'s Reply, Ex. 1, at 66 (Declaration of Sara Banks, employee of the Officer Management Division, United States Army Human Resources Command, stating that "I have not identified any records that indicate LTC Miller opted-in to the Calendar Year (CY) 2018 or CY 2019 battalion command selection boards"); id. at 68–69 (Declaration of Pfiffner Valery, employee of the Officer Management Branch, Headquarters, U.S. Army Reserve Command, stating that "[n]either Army, Army Reserve Policy nor the MILPER Messages preclude officers with a suspension of personnel favorable action or flag from applying for command or being considered for command").